STATE OF CONNECTICUT ET AL. *v.* STATE
EMPLOYEES' REVIEW BOARD ET AL.
(14999)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

Argued September 29—decision released December 6, 1994

*Maria C. Rodriguez,* assistant attorney general, with whom were *Laurie Adler,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellants (plaintiffs).

*David A. Zipfel,* for the appellee (defendant Daniel Cawley).

BORDEN, J. The dispositive issue in this appeal is whether the trial court properly determined that a decision of the defendant state employees' review board (review board) was not a final decision for the purposes of appeal under the Uniform Administrative Procedure Act (UAPA), General Statutes §§ 4-166 through 4-189. The plaintiffs, the state of Connecticut, the state department of public safety (public safety) and the state department of administrative services (administrative services), appeal[1] from the judgment of the trial court, rendered after a hearing and submission of posthearing memoranda, sustaining the decision in part and modifying the review board order. Specifically, the trial court: (1) determined that the decision of the review board was not final; and (2) nonetheless, sustained the decision in part, and modified it by adding to it a provision for the review board to retain jurisdiction over the matter. The plaintiffs claim that the trial court: (1) improperly determined that the review board's decision was not final for the purposes of the UAPA; and (2) improperly modified the review board's decision to cause the review board to retain jurisdiction over the matter. We reverse the judgment of the trial court.

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The factual findings of the review board as set forth in its decision and order, and the procedural history of this case, are not disputed for purposes of this appeal. The defendant Daniel Cawley[2] was hired by public safety in May, 1986, as a data processing manager 3 (DPM 3).[3] At that time, he supervised approximately thirty employees as well as the activities of the data processing unit. Over the next several years, Cawley's supervisory responsibilities diminished until November 30, 1990,[4] when those responsibilities were completely terminated. Instead, public safety assigned him to special projects that he conducted independently. Public safety gave Cawley's supervisory responsibilities to a DPM 1, a position of lower rank and salary than a DPM 3. This shift in duties was intended to be, and was, permanent.

Early in 1990, a classification specialist from administrative services advised public safety to make changes in the data processing unit. Specifically, administrative services advised public safety to "red-circle" the DPM 3 position,[5] and to abolish or reclassify it to a nonmanagerial level once it had been vacated. Despite the administrative services directive, when Cawley was permanently reassigned to a nonsupervisory position in November, 1990, public safety did not review the classification of his position. Rather, Cawley remained

---

[2] The named defendant, the review board, is the only other defendant. The review board was represented by an assistant attorney general, but took no position and filed no briefs in the trial court or before this court.

[3] The job description for a DPM 3 requires that the employee direct a major data processing installation and supervise an assigned staff of managers, supervisors, technical and clerical personnel.

[4] By the spring of 1990, Cawley supervised only approximately twenty employees.

[5] The review board made a finding of fact that red-circling a position is a method adopted by administrative services for carrying out its statutory mandate to review periodically work performed by employees in order to determine whether their job classifications are correct. It involves designating a position for formal review if and when a permanent vacancy develops. The decision to red-circle a position involves an informal finding that such position is probably misclassified.

a DPM 3.[6] Cawley continued to draw pay as a DPM 3 after his reassignment until public safety laid him off on May 31, 1991.

Cawley appealed to the review board pursuant to General Statutes § 5-202,[7] seeking a determination as

[6] The maximum annual salary for a DPM 3 is approximately $81,000, which exceeds the maximum annual salary for a DPM 1 by nearly $21,000. The maximum annual salary for a nonmanagerial data processing specialist is less than that of a DPM 1.

[7] General Statutes § 5-202 provides: "APPEAL BY EMPLOYEE. (a) Any employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment as defined in subsection (r) of section 5-196 may appeal to the employees' review board if he or she receives an unsatisfactory performance evaluation or is demoted, suspended or dismissed, or is aggrieved as a result of alleged discrimination, or unsafe or unhealthy working conditions or violations involving the interpretation and application of a specific state personnel statute or regulation. Such employee must have complied with preliminary review procedures, except as otherwise provided in subsection (k) of this section. Such an appeal shall be submitted to the board within ten days of the completion of the final level of the preliminary review procedure, provided the first level of the procedure shall have been initiated no later than thirty calendar days from the date of the alleged violation, except that in cases of dismissal, demotion or suspension the grievance must be submitted directly to the third level of the procedure within twenty-one calendar days of the effective date of such action.

"(b) Upon receiving an appeal, the board shall assign a time and place for a hearing and shall give notice thereof to the parties concerned. The hearing panel shall not be bound by technical rules of evidence prevailing in the courts. If, after hearing, a majority of the hearing panel determines that the action appealed from was arbitrary or taken without reasonable cause, the appeal shall be sustained; otherwise, the appeal shall be denied. The hearing panel shall have the power to direct appropriate remedial action and shall do so after taking into consideration just and equitable relief to the employee and the best interests and effectiveness of the state service. The hearing panel shall render a decision within sixty calendar days from the date of the conclusion of the hearing.

"(c) The employee in any such case shall be furnished, upon his request, with a copy of the transcript of the proceedings before the board. The chairman of the board shall establish a fair and reasonable fee per page to be charged for such transcript which fee shall not exceed the fee per page for a transcript charged by court reporters for the judicial district of Hartford-New Britain.

"(d) Within ten days of the issuance date of a decision by a hearing panel sustaining an appeal, the appointing authority of the employee shall take

to whether his layoff was in accordance with General

such measures as are necessary to comply with the remedial action directed by the hearing panel.

"(e) An employee laid off or dismissed by reason of economy, lack of work, insufficient appropriation, change in departmental organization or abolition of position may file an appeal with the board only on the grounds that the order of layoff or dismissal has not been determined in accordance with the provisions of section 5-241, provided such employee has initiated the third level of the preliminary review procedure within twenty-one calendar days of the effective date of such layoff or dismissal.

"(f) All matters involving examination, including application rejection, type of examination or results, compensation for class or classes or duties, establishment of a new class or classes, occupational group or career progression level, compliance with health and safety standards and the Connecticut Occupational Safety and Health Act or alleged discrimination in cases where an appeal has been filed with the human rights commission, shall not be appealable under this section.

"(g) The first level of the preliminary review procedure preparatory to the filing of an appeal from an alleged grievable action other than dismissal, demotion or suspension shall be the aggrieved employee's supervisor or department chief or other employee as designated by the employee's appointing authority. Such aggrieved employee shall present his grievance in writing on a form developed by the commissioner of administrative services and the employee review board which form shall contain a statement of the date the alleged violation occurred and the relief sought in answer to the grievance. The first level designee shall give his answer to such employee within seven calendar days from the date the grievance is submitted to him or within seven days from the date of a meeting convened for the purpose of reviewing the grievance, in which case such meeting shall be convened within seven calendar days from the date the grievance is submitted.

"(h) The second level of the preliminary review procedure preparatory to the filing of an appeal from an alleged grievable action other than dismissal, demotion or suspension shall be the aggrieved employee's appointing authority or designated representative. Such employee, upon receiving a response at the first level which he deems to be unsatisfactory, may proceed to this level by presenting the same form containing the first level answers within seven calendar days from the date the answer was given at the first level. The appointing authority or designated representative shall answer such employee within seven calendar days from the date the grievance is received or within seven calendar days from the date of a meeting convened for the purpose of reviewing such grievance, in which case such meeting shall be convened within seven calendar days from the date such grievance is received.

"(i) The third level of the preliminary review procedure preparatory to the filing of an appeal from an alleged grievable action including dismissal,

Statutes § 5-241,[8] which requires layoffs by seniority within a position classification selected for layoff. The review board determined that because Cawley's position had not been reviewed pursuant to the administrative services recommendation, neither his proper position classification nor his relative seniority within

demotion or suspension shall be the commissioner of administrative services or his designated representative. The employee, upon receiving a response at the second level which he deems to be unsatisfactory, may proceed to this level by presenting the same form containing the first and second level answers within seven calendar days from the date the answer was given at the second level, except in the case of a dismissal, demotion or suspension in which case such employee must present the form, completed but without answers at lower levels within twenty-one calendar days of the effective date of such action. The commissioner of administrative services or his designated representative shall reply to such employee within thirty calendar days from the date such grievance is received or within fifteen calendar days from the date of a meeting convened for the purpose of reviewing such grievance, in which case such meeting shall be convened within thirty calendar days from the date such grievance is received.

"(j) Employees shall be entitled to have representation of their own choosing at any or all levels of the review or appeal procedure. No verbatim records shall be required in the preliminary procedure and no oaths or affirmations shall be administered.

"(k) Any state officer or employee, as defined in section 4-141, or any appointing authority shall not take or threaten to take any personnel action against any state employee in retaliation for such employee's filing of an appeal with the employees' review board or a grievance with any level of the preliminary review procedure pursuant to this section. An employee alleging that such action has been threatened or taken may file an appeal directly with the board within thirty days of knowledge of the specific incident giving rise to such claim.

"(l) Either the state or any employee aggrieved by a decision of the employees' review board may appeal therefrom in accordance with section 4-183. Any employee who prevails in a decision of the employees' review board shall be entitled to recover court costs and reasonable attorney's fees if such decision is appealed by the state and affirmed by the court in such appeal."

[8] General Statutes § 5-241 provides in pertinent part: "ORDER OF LAYOFFS. NOTICE. PLACEMENT ON REEMPLOYMENT LIST. (a) No employee in the classified service . . . shall be dismissed or laid off from his position . . . if any other employee in the same classification performing comparable duties with less state service is to be retained in the same department, agency or institution. . . ."

that classification could be determined. Therefore, the review board concluded, the layoff was improper as "arbitrary or taken without reasonable cause." See General Statutes § 5-202 (b).[9] Thereafter, the review board ordered public safety, with the assistance of administrative services, to "review the position classification of Daniel Cawley's [DPM 3] position, as of the time when he was assigned to new duties, November 30, 1990, and, based on such duties, determine the appropriate classification of his position." The review board's order also directed public safety, upon completion of the classification review, to follow its normal procedures in determining which positions should have been abolished and which employees occupying those positions should have been laid off. The review board ordered that if the result of the analysis indicated that Cawley was wrongfully laid off, he was to be reinstated and awarded appropriate back pay, seniority and other benefits. The review board made clear that it was not ordering the state to review the classification of all red-circled positions, but rather that its decision required review as follows: "if a position has been red-circled and if a permanent vacancy has occurred therein, and such position [has been] considered for layoff, the classification of such position must be reviewed and decided before a layoff decision affecting such position can be made." The review board did not retain jurisdiction over the dispute.

The plaintiffs appealed to the trial court pursuant to General Statutes §§ 5-202 (*l*)[10] and 4-183[11] claiming that

---

[9] General Statutes § 5-202 (b) provides in pertinent part: "If, after hearing, a majority of the hearing panel determines that the action appealed from was arbitrary or taken without reasonable cause, the appeal shall be sustained . . . ." See footnote 7.

[10] See footnote 7 for the text of § 5-202 (*l*).

[11] General Statutes § 4-183 provides in relevant part: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the supe-

they were aggrieved by the review board's decision and that the decision exceeded the review board's statutory authority. The trial court first determined that the review board decision was not a final decision within the meaning of § 4-183, and therefore was not appealable to the trial court because Cawley's right to reinstatement had not been finally determined by the review board. Having reached that conclusion, however, the trial court recognized that it was faced with a conundrum, namely, that: (1) lack of a final decision would "ordinarily" require dismissal of the appeal; but (2) if the appeal were dismissed, it was possible, depending upon the outcome of the future proceedings ordered by the review board, that public safety would be deprived of an opportunity to challenge the validity of the administrative regime mandated by the review board decision, which public safety claimed to be beyond the authority of the review board.[12]

rior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

General Statutes § 4-166 provides in pertinent part: "DEFINITIONS. As used in this chapter . . .

"(2) 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 or hearings referred to in section 4-168;

"(3) 'Final decision' means (A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. The term does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration . . .

"(8) 'Party' means each person (A) whose legal rights, duties or privileges are required by statute to be determined by an agency proceeding and who is named or admitted as a party, (B) who is required by law to be a party in an agency proceeding or (C) who is granted status as a party under subsection (a) of section 4-177a . . . ."

[12] The trial court reasoned that if Cawley were dissatisfied with the results of the position classification review process ordered by the review board, he could appeal again to the review board and that, in the course of that

In order to resolve this conundrum, the trial court determined that the review board should have retained jurisdiction over Cawley's appeal "for the purpose of ultimately rendering a final decision after [public safety] had resolved the contingencies as directed by the order." How to implement that determination produced a second conundrum, however, because a determination that there had been no final decision necessarily would have required the trial court to dismiss the appeal for lack of subject matter jurisdiction.[13] Nonetheless, the trial court rendered judgment sustaining the appeal in part, and ordering a modification of the review board decision, requiring the review board to retain jurisdic-

appeal, public safety could challenge the authority of the review board to have ordered that process. Under that scenario, the trial court reasoned, if public safety were dissatisfied with the result of Cawley's second appeal to the review board, public safety could then appeal further to the trial court pursuant to § 4-183.

Absent a second appeal to the review board by Cawley, however, either because, for example, he was satisfied by the result of the process mandated by the review board or because he felt that a further appeal would be fruitless, there would be no opportunity for public safety to challenge the authority of the review board to have ordered public safety and administrative services to undergo that administrative process. This would have been so because only an employee may appeal to the review board pursuant to § 5-202 (a). Thus, as the trial court perceived, without the right of further access to the review board by public safety, the review board would have no occasion to render a "final decision" within the meaning of § 4-183 and, therefore, there would be no opportunity for an appeal by public safety to the trial court.

[13] Our well established case law interpreting the UAPA requires, with certain exceptions not applicable here; see, e.g., General Statutes § 4-183 (b); a "final decision" in a contested case as a prerequisite to subject matter jurisdiction over an appeal. See, e.g., *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection,* 226 Conn. 792, 811–12, 629 A.2d 367 (1993). Lack of subject matter jurisdiction requires that the court dismiss the appeal, and strips the court of any residual power to enter further orders. See Practice Book § 145; *Polymer Resources, Ltd.* v. *Keeney,* 227 Conn. 545, 557, 630 A.2d 1304 (1993); *Ertel* v. *Carothers,* 34 Conn. App. 18, 21–22, 639 A.2d 1055 (1994); see also *Fong* v. *Planning & Zoning Board of Appeals,* 212 Conn. 628, 629–30 n.1, 563 A.2d 293 (1989); *Cole* v. *Planning & Zoning Commission,* 30 Conn. App. 511, 513 n.1, 620 A.2d 1324 (1993).

tion over Cawley's appeal and to permit further appeal by any party. In the trial court's view, this order solved the conundrum because it gave public safety an avenue of further access to the review board and, thereby, to the trial court, for the purpose of later challenging the authority of the review board to order the position classification review process at issue in this case. The trial court also noted that its decision would enable the review board to monitor the compliance with its order by public safety and administrative services.

The trial court identified two sources of authority to support its ordering the review board to retain jurisdiction, despite the court's determination that there had been no final decision for purposes of appeal pursuant to § 4-183. The first source was § 4-183 (k).[14] The trial court's reliance on this provision is misplaced, however, because the trial court's power to modify an agency's decision follows the court's decision to sustain the appeal, which can only be done if the trial court had subject matter jurisdiction over the appeal.

The second source was by analogy to the federal administrative law doctrine of primary jurisdiction. The trial court relied on *United States* v. *Michigan National Corp.*, 419 U.S. 1, 6, 95 S. Ct. 10, 42 L. Ed. 2d 1 (1974), for the proposition that "[w]here suit is brought after the first administrative decision and stayed until remaining administrative proceedings have concluded, judicial resources are conserved and both parties fully protected." The difficulty with this source of authority, however, is that the federal doctrine of primary jurisdiction presupposes that both the federal court and the administrative agency have concurrent subject mat-

---

[14] General Statutes § 4-183 (k) provides: "If a particular agency action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the agency decision, orders the particular agency action, or orders the agency to take such action as may be necessary to effect the particular action."

ter jurisdiction. See, e.g., *Pan American World Airways* v. *United States,* 371 U.S. 296, 83 S. Ct. 476, 9 L. Ed. 2d 325 (1963). Thus, its use in this context would be inconsistent with our jurisprudence that a trial court has subject matter jurisdiction over an administrative appeal only if the administrative agency has rendered a final decision. Indeed, there are instances under federal administrative law, analogous to our law, in which the federal court must dismiss an action because an administrative agency has exclusive jurisdiction to consider the complaint. See, e.g., *United States* v. *Michigan National Corp.,* supra, 5 n.2.

Thus, the trial court's analysis, although a creative attempt to surmount the jurisdictional hurdles that it accurately perceived, itself engendered other insurmountable jurisdictional hurdles. Having determined, therefore, that the trial court's analysis cannot stand, we turn to the plaintiffs' claim that the trial court's initial conclusion, namely, that the review board decision was not final, was flawed.

The plaintiffs claim that the review board's decision is final because, under the UAPA, it is an agency determination in a contested case. They argue that the test for finality of an agency decision under the UAPA is whether: (1) judicial review would effect the orderly process of adjudication of the case; (2) obligations or legal consequences would flow from the agency decision; and (3) the agency intended to render a final decision. The plaintiffs contend that under this test, the review board's decision is final.[15] The plaintiffs also claim that the review board has no statutory authority to maintain jurisdiction over an appeal once it has rendered a decision. We agree with both claims.

---

[15] The plaintiffs argue, in the alternative, that the review board order was an appealable interlocutory order. Because we conclude that the review board decision was final, we need not address this claim.

In determining whether an administrative decision is "final" for the purposes of § 4-183 (a), we look first to our statutes governing such determinations. General Statutes § 4-166 (3) states that a final decision is an "agency determination in a contested case," but the term "does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration." A contested case is further defined as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ." General Statutes § 4-166 (2); see footnote 11.

"The considerations underlying the requirement of finality of an agency decision as a prerequisite to judicial review are akin to those involved in the ripeness doctrine as applied to administrative rulings. [I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Abbott Laboratories* v. *Gardner*, 387 U.S. 136, 148–49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967). The cases dealing with judicial review of administrative actions have interpreted the finality element in a pragmatic way. Id., 149. [T]he relevant considerations in determining finality are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action. *Port of Boston Marine Terminal Assn.* v. *Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S. Ct. 203, 27 L. Ed. 2d 203 (1970)." (Inter-

nal quotation marks omitted.) *New Haven* v. *New Haven Police Union Local 530,* 210 Conn. 597, 604, 557 A.2d 506 (1989). Another significant consideration is whether the agency intended its decision to be final. We have stated that "[s]o long as the agency intends to render a final decision and the person taking the appeal is aggrieved by the decision rendered, the fact that other related issues are reserved for later adjudication does not necessarily detract from its finality." Id., 606.

We conclude that the review board decision in this case satisfies the criteria for a final decision of an agency as set forth in New Haven. First, because no further administrative proceedings before the review board were contemplated, an appeal to the trial court would not " 'disrupt the orderly process of adjudication.' " Id., 604. It is true, as the trial court noted, that considering this review board decision to be nonfinal would avoid "piecemeal" appeals in that Cawley's ultimate right to future employment would thereby be fully determined prior to judicial review of the review board decision. Under the UAPA, however, that does not necessarily detract from the finality of the review board decision. See id., 606. In this case, despite the possibility of a subsequent appeal, specific legal duties have been imposed on public safety and administrative services and, therefore, this appeal is not an "abstract [disagreement] over administrative policies." Id., 604.

Second, the review board order directing public safety and administrative services to review the classification of Cawley's DPM 3 position immediately affected the administration of both agencies. As a direct result of the review board decision, both public safety and administrative services are required to undergo an administrative process of reviewing classifications in a certain class of cases. Thus, the "legal rights, duties or privileges of a party"; General Statutes § 4-166 (2); namely, public safety and

administrative services, have been determined, and " 'legal consequences will flow from the agency action.' " *New Haven* v. *New Haven Police Union Local 530,* supra, 210 Conn. 604.

It is not dispositive that, as the review board characterized it, its "decision is a very narrow one, and should not seriously impact the State." The review board has directed public safety, with the assistance of administrative services, to review the classification of Cawley's DPM 3 position and to apply the results of that review to Cawley's layoff. Under § 5-202 (d), public safety must within ten days "take such measures as are necessary to comply with the remedial action directed by the hearing panel."

If public safety were required to adhere to the review board order, its effects would be " 'felt in a concrete way by the challenging parties.' " *New Haven* v. *New Haven Police Union Local 530,* supra, 210 Conn. 604.[16] The fact that in the present case such an order might not be difficult to carry out does not change the analysis. The ease with which public safety could comply with the order does not make it less concrete. Two state agencies have been ordered to undertake specific administrative actions. These actions, although purportedly unobtrusive, are, according to the plaintiffs, illegally ordered. Although the review board decision may leave open final resolution of Cawley's rights with respect to his employment, certain obligations of public safety and administrative services have been finally

---

[16] Our decision in *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities,* 202 Conn. 150, 520 A.2d 186 (1987), is not to the contrary. In that case, we held that an appeal from an agency order determining that an employer had discriminated against the complainant because of her gender and awarding her back pay was not final because the precise amount of the award had not been established until a subsequent agency order was issued two months later. In that case, however, because the damages had not yet been calculated, the effects of the commission decision had not been felt by the defendant in a concrete way.

resolved and concrete legal responsibilities have been placed upon these agencies. This takes the review board decision out of the realm of the abstract and creates a finality for which the UAPA provides an appellate process.

Moreover, as the plaintiffs argue, the statutes governing the review board contain no provision for the review board to retain jurisdiction and monitor compliance with its orders.[17] "An administrative agency, as a tribunal of limited jurisdiction, must act strictly within its statutory authority. *Castro* v. *Viera,* 207 Conn. 420, 428, 541 A.2d 1216 (1988); *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 230, 278 A.2d 771 (1971). [An administrative agency] possesses no inherent power. Its authority is found in a legislative grant, beyond the terms and necessary implications of which it cannot lawfully function. *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 537–38, 79 A.2d 350 (1951); General Statutes § 19a-10. Absent a grant of authority, any sanction meted out by the board is necessarily void. *Newington* v. *Mazzoccoli,* 133 Conn. 146, 156, 48 A.2d 729 (1946)." (Internal quotation marks omitted.) *Stern*

---

[17] The review board was established pursuant to General Statutes § 5-201, which provides in pertinent part: "EMPLOYEES' REVIEW BOARD. (a) There shall be an employees' review board consisting of seven members . . . .

"(b) The board shall hear and act upon appeals filed with it in accordance with section 5-202. The board, or any three of its members designated by the board, may serve as a hearing panel and render a decision. . . ."

The scope of the review board's authority is governed by § 5-202. See footnote 7. There is no provision in that statute explicitly giving the review board the authority to retain jurisdiction over an appeal to it after it has rendered a decision therein, and we cannot conclude that such authority is necessary for the review board to function lawfully. Indeed, two subsections of § 5-202 strongly suggest the absence of such authority. Subsection (b) requires the review board hearing panel to render a decision within sixty days of the conclusion of the hearing, and subdivision (d) requires that the employee's appointing authority comply with any remedy ordered within ten days of the issuance of the review board hearing panel's decision.

v. *Medical Examining Board,* 208 Conn. 492, 498, 545 A.2d 1080 (1988). Thus, the trial court's attempt to cure the problem that it perceived as a result of a lack of finality by ordering the review board to retain jurisdiction over Cawley's appeal imposed an authority on the review board that its governing statutes do not contemplate. This highlights another reason, rooted in the language of § 4-183, why the review board decision was a "final decision of the agency."

The review board, as the sole agency from which any party to this litigation could appeal, cannot retain jurisdiction over an appeal after it has decided that appeal. Thus, any further proceedings at the public safety or administrative services level will not result in a final decision of an "agency."[18] As the trial court noted, if public safety and administrative services comply with the review board order and, as a result, Cawley is satisfied, Cawley will have no reason to appeal. In that case, administrative services and public safety could not appeal to the review board because appeals to that agency are limited to "employees."[19] Any attempted appeal from such reinstatement by either public safety or administrative services directly to the trial court under § 4-183 would necessarily fail because that reinstatement action would not be a final decision of an agency. The review board's decision in this case is the only decision of an agency in a contested case from which these plaintiffs could appeal.

---

[18] Aggrievement by a final decision of an agency is an essential predicate to review by the Superior Court. See footnote 11. Although public safety and administrative services are both state agencies in a general sense, for the purpose of the UAPA they are not the "agency" rendering a final decision in a contested case. The review board is that agency, and public safety and administrative services are contestants before that agency. Hence, despite the trial court's creative attempt to avoid the conundrum it perceived, if Cawley were reinstated or otherwise satisfied as a result of the ordered position classification review process, there would never be a final decision of an agency that would trigger the plaintiffs' right to appeal.

[19] See footnote 7 for the text of § 5-202.

Finally, it is apparent from the text and the surrounding circumstances of the review board decision that the review board intended it to be a final decision. The trial court noted that "[i]t is not clear whether the review board intended to render a final decision, because its decision is not so labeled. Whether or not it intended to do so, however, the finality of a decision must be determined on the basis of its terms." Although we agree that the label of an administrative decision is not dispositive of the agency's intent, we do not agree that finality may be determined irrespective of the intent of the agency issuing the order. In *New Haven*, we stated that "our statutes . . . giv[e] an agency discretion to limit in a practical way the scope of an administrative proceeding . . . . *So long as the agency intends to render a final decision* and the person taking the appeal is aggrieved by the decision rendered, the fact that other related issues are reserved for later adjudication does not necessarily detract from its finality." (Emphasis added.) *New Haven* v. *New Haven Police Union Local 530,* supra, 210 Conn. 606.

Even in the absence of a label by the review board, a review of its decision indicates that it intended to render a final decision. First, the review board was fully cognizant of § 5-202 (b), which requires "a decision within sixty calendar days from the date of the conclusion of the hearing." The review board rendered its decision without reserving any issue or ordering further evidence. Without some indication to the contrary, we presume that the review board intended to comply with the statute. Second, the review board determined that it no longer had any responsibility for the case, stating: "However, our responsibility is not to see that [Cawley] is either reinstated or laid off, but only to insure that the classification and layoff process is legally sufficient. In making our decision, we have considered and rejected [Cawley's] theory that, because [admin-

istrative services] pays no attention to position classifications when it assigns data processing managerial duties, we should do the same, and compare employees for layoff purely on seniority." Having rendered its decision, the review board had completed its duty as it saw fit and terminated the proceeding.

Cawley argues, however, that this case is not governed by the criteria set forth in *New Haven*. He asserts that the trial court properly distinguished *New Haven* when it stated that "[i]n that case the state board of labor relations had rendered a final decision determining the unfair labor practice claims against the city by issuing a cease and desist order and granting other relief, but had reserved jurisdiction with respect to the amount of compensation due to the many police officers. The court found that '[s]uch a reservation was appropriate in this instance because the time required of adjudication of the numerous claims of the individual officers might well have delayed enforcement of the cease and desist order .' . . . No such exceptional circumstances, however, are presented in this case." (Citation omitted.) We are not persuaded by this distinction. In *New Haven*, we did not determine that the labor board's decision was final because of the jurisdictional reservation, but rather in spite of it. The labor board's cease and desist provision was final because it "would have become effective immediately in the absence of an appeal." *New Haven* v. *New Haven Police Union Local 530*, supra, 210 Conn. 605. As with the case now before us, the agency's decision finalized rights and obligations of two of the parties, and would have become effective immediately in the absence of an appeal.

Cawley also argues that because "[t]he remand by [the review board] clearly calls for the State to exercise judgment," the review board's decision was not final. In this respect, Cawley relies on our decisions in *Szudora* v. *Fairfield*, 214 Conn. 552, 573 A.2d 1 (1990),

and *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 588 A.2d 194 (1991). These cases are distinguishable.[20] Both *Szudora* and *Cleveland* involved decisions by the workers' compensation review division, which is not governed by the UAPA. In those cases, we held that decisions of the review division are not appealable to the Appellate Court unless they meet the criteria for finality of court judgments for purposes of appeal. *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 185; *Szudora* v. *Fairfield*, supra, 556. Although there are certainly similarities between the criteria for finality of court judgments for purposes of appeal to our appellate courts and the criteria for determining whether an agency decision is final for purposes of appeal to the trial court under the UAPA, those respective criteria are not necessarily the same. That is reflected by the fact that the formulations of the respective criteria differ. Compare, e.g., *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), with *New Haven* v. *New Haven Police Union Local 530*, supra, 210 Conn. 597.

The judgment is reversed, and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[20] Cawley's reliance on *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 579 A.2d 505 (1990), is similarly misplaced. The issue in *Lieberman* was whether a trial court remand to the state board of labor relations was a final judgment, and not whether a decision of an agency was a final decision under the UAPA.