[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff[1] from two "orders" of the Fair Rent Commission ("Commission") of the Town of Manchester. In May, 1996, ten complaints were filed with the Commission by tenants at the South Park buildings. Although each complaint was different, the predominant theme of the complaints was that the plaintiff did not repair and maintain the premises in a workmanlike or timely manner. A lengthy hearing was held on July 22, 1996; two "orders" followed the hearing. The first, dated July 29, 1996, and sent by and signed by the town's director of health, listed "agreements" reached at the July 22 hearing; the second, dated August 7, 1996, and signed by the chairman of the commission, listed a number of additional "agreements" that had been reached at the hearing and stressed that Mr. Mrosek had thirty days from receipt of the order to complete the tasks. A motion at the conclusion of the July 22 hearing had been passed to the effect that if the items were not completed within 30 days, the monthly rent for each of the complainants would be reduced by the amount of fifty dollars per month of noncompliance. The plaintiff apparently corrected all or almost all of the actual code violations within the agreed upon period, but did not fix some of the other items, and appealed to CT Page 751 this court from both orders of the commission.
The appeal claims a variety of defects in the proceedings before the commission; in its amended complaint, the plaintiff alleges that notice of the hearing and of the July decision were defective; that the plaintiff was denied the opportunity to present evidence at the hearing; that the commission exceeded its statutory authority; that the August decision was issued without a hearing and an opportunity to be heard; and, more generally, that due process was violated. The answers of the defendants[2]
generally deny that there were any significant irregularities.[3]
I have read the lengthy transcript of the proceedings before the commission and the exhibits submitted to the commission[4], and I find that there are several significant obstacles to traditional judicial review. First, and perhaps most significantly, the hearing was simply not conducted as an adjudicatory proceeding. Although witnesses were sworn, the proceedings were largely conversational and there was no clear adherence to any set of pleadings or other standard for relevance. Commissioners frequently "testified" about conditions and frequently made comments about what "George" ought to do to improve the conduct of his business. The hearing appeared to be more an opportunity for tenants to express their frustrations, and for all of those concerned to reach a mutually agreed upon plan, than an adjudication. Mr. Mrosek, though represented by counsel, also from the outset appeared interested in reaching an accommodation with the tenants. At the hearing, Mr. Mrosek typically agreed to address each problem raised by the tenants, and a timetable for repairs was agreed to. The sanction of a reduction of rent in the amount of fifty dollars per month per complainant was almost an afterthought and was not disputed at the hearing. At some point after the hearing the plaintiff apparently changed his mind, and this appeal followed.[5]
There are also difficulties with the record itself. Significant parts of the transcript are missing because words were inaudible to the transcriber; speakers frequently are not identified; and there are significant gaps when tapes ran out. At the conclusion of the hearing, for example, when the commissioners were presumably discussing the final order, the tape machine apparently was not running at all. As noted above, it was agreed that 42 exhibits were improperly included in the record, and a number of reports and correspondence generated after the hearing were included as exhibits. A number of items CT Page 752 which clearly were considered by the commissioners were never marked as exhibits and were not included in the record; most obviously, these include photographs of conditions.
I find, however, that the nature of the proceedings and of the order precludes judicial review. The actual motion adopted by the commission, Exhibit 114, stated that the owner shall, within thirty days, develop a plan for maintenance and handling tenant complaints, complete all items of maintenance and repair as agreed during the hearing, and provide janitorial service to certain areas twice monthly, and if these conditions are not met, the rent of all complainants will be reduced by $50.00 per month. Some further action of the commission would certainly seem to be required if the rent were to be reduced; that is, the order would not appear to be self-executing. Further, it appears from documents included, perhaps erroneously, in the record that work in fact was done in at least some of the units, and the commission indeed may find that there is no remaining controversy, or that any remaining controversy is considerably narrowed.[6] Because some additional discretionary action on the part of the commission would be required before an order could be effective, and because effective judicial review is not possible in the present posture, the motion of the commission was not an appealable order.
 "The considerations underlying the requirement of finality of an agency decision as a prerequisite to judicial review are akin to those involved in the ripeness doctrine as applied to administrative rulings. [I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The cases dealing with judicial review of administrative actions have interpreted the finality element in a pragmatic way. Id., 149. [T]he relevant considerations in determining finality are whether the process of administrative decision making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action. Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)." (Internal quotation marks omitted.) CT Page 753 New Haven v. New Haven Police Union Local 530, 210 Conn. 597, 604, 557 A.2d 506 (1989). Another significant consideration is whether the agency intended its decision to be final. We have stated that "[s]o long as the agency intends to render a final decision and the person taking the appeal is aggrieved by the decision rendered, the fact that other related issues are reserved for later adjudication does not necessarily detract from its finality." Id., 606. State v. State Employees' Review Board, 231 Conn. 391, 403-04 (1994).
In the instant case, it is clear that the rights of the parties have not yet been concluded by the commission, and it is not clear that the commission intended its motion to be final.
It is true, of course, that the language governing appeals from fair rent commissions, § 7-148e, is somewhat broader than the language in UAPA, § 4-183 (a), as the former does not include the word "final". Regardless of whether the word "final" appears in the statute authorizing the appeal, however, our jurisprudence requires, in a broad range of administrative appeals, that an appeal is premature where further administrative action, other than a ministerial formality, is required to conclude the rights of the parties. See, e.g., Cleveland v. U.S.Printing Ink, Inc., 218 Conn. 181, 185 (1991); Szudora v.Fairfield, 214 Conn. 552, 556 (1990); State v. Curcio,191 Conn. 27 (1983); Hall v. Gilbert Bennett Mfg. Co., 241 Conn. 282
(1997); Darcy v. CHRO, 41 Conn. App. 1 (1996); Wisniowski v.Planning Commission, 37 Conn. App. 303 (1995). As a practical matter, it makes little sense to try to come to terms with an incomplete order.
It may be useful, however, to discuss several of the issues raised in order to supply some guidance on remand. It is axiomatic that municipal agencies have only those powers conferred by statute.[7] The orders of a Fair Rent Commission, in the context of the instant case, are limited to those delineated in § 7-148d of the General Statutes:
 Sec. 7-148d. Order for limitation on amount of rent. Suspension of rent payments. Cease and desist orders for retaliatory actions. (a) If a commission determines, after a hearing, that the rental charge or proposed increase in the rental charge for any housing accommodation is so excessive, based on the standards and criteria set forth in section 7-148c, as to be harsh and unconscionable, it may order that the rent CT Page 754 be limited to such an amount as it determines to be fair and equitable. If a commission determines, after a hearing, that the housing accommodation in question fails to comply with any municipal ordinance or state statute or regulation relating to health and safety, it may order the suspension of further payment of rent by the tenant until such time as the landlord makes the necessary changes, repairs or installations so as to bring such housing accommodation into compliance with such ordinance, statute or regulation. The rent during said period shall be paid to the commission to be held in escrow subject to ordinances or provisions adopted by the town, city or borough.
 (b) If the commission determines, after a hearing, that a landlord has retaliated in any manner against a tenant because the tenant has complained to the commission, the commission may order the landlord to cease and desist from such conduct.
There are, then, three sorts of orders which may be issued pursuant to § 7-148d: a finding that, based on the criteria of § 7-148c[8], a rental charge or proposed increase is so excessive as to be harsh and unconscionable; an order that rent payments be paid to an escrow fund if premises fail to comply with state or local ordinances pertaining to health and safety; and an order that certain actions have been retaliatory.
Perhaps because of the informal way in which the hearing was conducted, there is no mention in the record of the basis for the orders issued by the commission. There is no express finding that any of the statutory criteria have been considered, and no indication as to which statutory provisions were violated. Although some latitude is to be extended to municipal agencies, and decisions are to be upheld, in general, if evidence supports the conclusions and the conclusions reflect a correct application of the law; see, e.g., Saporiti v. Zoning Board of Appeals,137 Conn. 478, 482-83 (1951); "[the court] retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. . . ." (Citations omitted.) United Parcel Service,Inc. v. Administrator, 209 Conn. 381, 385-86, 551 A.2d 724
(1988). If the basis for decision is not apparent from a review of the record, the court cannot perform its function.
Several factors are clear, however. First, there does not seem to be any issue of retaliatory action raised at the July, 1996, hearing; thus, it seems apparent that the orders issued at CT Page 755 the conclusion of the hearings, if valid, had to be based either on code violations or on a finding of "harsh and unconscionable" rental charges. Although there was evidence of several code violations[9], it was not clear which units were affected by code violations and the remedy ordered by the commission is not applicable to code violations, except perhaps to the extent that code violations could also constitute "repairs" pursuant to §7-148c(6). I find, then, that the orders could not have been made pursuant to § 7-148d(a) pertaining to code violations.
The remaining question is whether the orders may have been made pursuant to a finding under § 7-148d(a) that the rental charge was "harsh and unconscionable". It is true, as represented by the plaintiff, that the commission was apparently not interested in receiving information relevant to some of the factors listed in § 7-148c; it is also true that many of the complainants mentioned that they would be happy to pay the rent: it was only the perceived lack of responsiveness to complaints and a perceived shoddiness of workmanship that triggered the complaints in the first place. The attorney for several of the complainants suggests on appeal that the need to do several repairs, including the provision of a railing in the case of one of his clients, can itself justify a reduction in rent in the amount of fifty dollars per month pursuant to §§ 7-148d and 7-148c. If this is what the commission meant, it did not expressly say so; a uniform reduction in value in the amount of fifty dollar per month would, if that is what the commission meant, appear to be quite arbitrary.
If the commission decides to persevere with the matter, then, it should confine itself to orders specifically authorized by statute[10]; and, if it decides to reduce rent, it should as specifically as practicable state the reasons. Any items received in evidence should be clearly marked and preserved, and every effort should be made to preserve the proceedings in a complete record.[11] The appeal is dismissed.[12]
BEACH, J.