## ACORN TECHNOLOGY CAMPUS, LLC *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF WEST HAVEN

Superior Court, Judicial District of New Haven
File No. CV-06-4022523S

Memorandum filed June 6, 2007

*Day Pitney, LLP,* for the plaintiff.

*Corporation counsel of the city of West Haven,* for the defendant.

CORRADINO, J. In this case, the court has permitted extensive discovery. The defendant, the planning and zoning commission of the city of West Haven, has filed a motion to dismiss on various grounds and in conjunction with that motion has filed a motion to stay discovery. Argument was held on the motion to stay discovery, and the court will now attempt to address that motion.

I

Quoting from a 1912 case, which, in part, relied on an 1838 case, the court in *Baldwin Piano & Organ Co.* v. *Blake,* 186 Conn. 295, 441 A.2d 183 (1982), stated: "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) Id., 297.

But that observation is not dispositive of the claim by the plaintiff, Acorn Technology Campus, LLC (Acorn), that it has the right to conduct discovery to meet the jurisdictional challenge posed by the defendant's motion to dismiss. The court in *Standard Tallow*

*Corp.* v. *Jowdy*, 190 Conn. 48, 459 A.2d 503 (1983), stated: "The contention of the defendant that to order discovery would impermissibly impose the court's jurisdiction over the defendant prior to having even made the determination as to whether the court in fact had jurisdiction over this defendant, is erroneous. A court must have jurisdiction to determine its own jurisdiction, especially where, as here, the defendants have by their appearance put that question into issue. *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 227, 429 A.2d 478 (1980). The court may even apply sanctions for failure to obey a discovery order intended to establish or to refute jurisdiction. Id.; accord *Ins. Corporation of [Ireland, Ltd.]* v. *Compagnie des Bauxites [de Guinee]*, 456 U.S. 694, 709, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)." (Internal quotation marks omitted.) *Standard Tallow Corp.* v. *Jowdy*, supra, 57 n.7.

It should also be noted that there are due process implications surrounding the opportunity for discovery once a motion to dismiss is filed. Wesley W. Horton and Kimberly A. Knox note that "[i]f there is a disputed issue of fact critical to the determination of [a] motion to dismiss, due process requires an evidentiary hearing." W. Horton & K. Knox, 1 Connecticut Practice Series: Connecticut Superior Court Rules (2007 Ed.) § 10-31, p. 479, citing *Bradley's Appeal from Probate*, 19 Conn. App. 456, 467, 563 A.2d 1358 (1989). Insofar as a resolution of the motion to dismiss in this case will raise disputed issues of fact, it would be an odd interpretation of procedural due process rights that would prevent a litigant, such as the plaintiff here, from using discovery procedures to prepare its factual objections to a dismissal—discovery procedures, it should be noted, that are made available for all other stages of litigation.

## II

The defendant argues for the stay on three grounds: (1) the court must first decide the motion to dismiss because it is based on a claim of lack of subject matter jurisdiction; (2) "discovery is not needed in order to address the issues raised in the motion to dismiss"; and (3) discovery will cause unnecessary delays, disruptions and expense to the city.

If the premise set forth in ground (2) is not supportable for the reasons set forth in the previous discussion, ground (1) cannot be relied on and neither can ground (3) because inconveniences caused by the discovery are not "unnecessary."

The question then becomes, is discovery needed to address the issues raised in the motion to dismiss?

Or to put it another way, paraphrasing Practice Book § 13-2, is the discovery sought geared to the production and inspection of documents and information "material to the subject matter involved"—here, defending against the motion to dismiss? The discovery must be aimed at eliciting jurisdictional facts. If the discovery requested would be of no assistance in meeting the attack on jurisdiction, then the motion to stay is in order, and the court should go directly to deciding the motion to dismiss. Cf. *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 26–27, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004), a case cited by the defendant.

Posing the issue in this way requires, at least in the court's view, some examination of the motion to dismiss—how else can the court determine if the discovery is immaterial to the issues raised by that motion?

## III

### A

The court will reference the defendant's statement of facts in its motion to dismiss. Acorn owns property in

the town in a so-called industrial planned development (IPD) zone. On its own motion, the defendant "submitted to itself its own petitions to amend the Zoning Regulations and Zoning Map." One of the proposed amendments was to create a planned village district (PVD) that would apply to the Acorn site and would apparently contain industrial, commercial and residential uses. At page five of its memorandum of law, the defendant argues that prior to an August 22, 2006 public hearing, "the PVD district was not mapped on the Zoning Map, thus effectively rendering the PVD district a floating zone (references to record). The net result with respect to the Acorn property, therefore, was that it retained its designation as an IPD district exactly as it was mapped before the [defendant] opened the public hearing on its own petition." The memorandum of law goes on to reference the record to the effect that the defendant's chairman explained that the map change was withdrawn because the defendant needed more time to review the matter—that would be done "in the very near future." Acorn suggested that a regional shopping center be added to the list of uses in the PVD zone. The chairman stated that that would be looked at, but he did not want to decide "at the last minute of what we are going to do with that." At a continued public hearing, "the amended regulations included the new PVD district but this district was not mapped on the Zoning Map." When the legal notice of the decision was filed, Acorn filed an appeal.

On the basis of the foregoing, the defendant has moved to dismiss the first count. Its memorandum of law refers to accepted law: there is no constitutional right to judicial review of the action of a planning or zoning agency. Such review exists only under statutory authority. *Schwartz* v. *Town Plan & Zoning Commission*, 168 Conn. 20, 24, 357 A.2d 495 (1975).

It is then noted that General Statutes § 8-8 (b) allows appeals by "any person aggrieved by any decision of a board . . . ." In this regard, *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 559, 832 A.2d 611 (2003), states "that no appeal exists where a planning and zoning commission issues a decision that is merely preliminary and not binding without further action by a municipal agency." Relying on those principles, the defendant argues that there has been no final decision because the withdrawal of the PVD map amendment was not a final decision on the merits. The defendant did not believe its decision was final; as noted, the chairman indicated that the issue would be reviewed. No change in Acorn's existing zoning designation has been made.

The defendant quotes from *State* v. *State Employees' Review Board*, 231 Conn. 391, 403–404, 650 A.2d 158 (1994), which lists the reasons behind the requirement of finality, which fall into three parts: (1) by avoiding premature adjudication, courts will avoid entangling themselves in abstract disagreements over administrative policies; (2) the basic consideration is whether " 'the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication' "; id., 403; and (3) another consideration is whether "the agency intended its decision to be final." Id., 404.

On the basis of the previously mentioned factual claims, and relying on this case and a case that follows it, *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 146–48, 788 A.2d 1158 (2002), the defendant argues that clearly there was no final decision here.

But the defendant does not rest its argument on lack of finality. It cites *Harlow* v. *Planning & Zoning Commission*, 194 Conn. 187, 479 A.2d 808 (1984), for the proposition that "failure to act on a proposal cannot

be challenged by an administrative appeal." There, the trial court's issuance of a mandamus was upheld. The mandamus ordered the defendant to decide a site plan application, which it had refused to review. An appeal was no remedy because it "could only address the merits of the application and not the [defendant's] refusal to consider the application on the merits." Id., 196.

Finally, practical problems are mentioned. The matter was not brought to a vote, so the defendant put no statement of reasons on the record. The court is being asked to review an issue never developed on the record.

"Morever," Acorn seeks a court order requiring the Acorn property to be rezoned from IPD to PVD; "thus the plaintiff seeks an order attacking the presumptive valid (existing) IPD designation, even though the (present) record contains neither the record of proceedings when the [defendant] adopted the existing IPD designation nor a complete record of reasons for not changing the existing designation."

In fact, it is said, Acorn has a remedy if it wants a map change to PVD—file its own petition to that effect. If the defendant renders an unfavorable decision, it can appeal; if it refuses to act, welcome to *Harlow* v. *Planning & Zoning Commission*, supra, 194 Conn. 187.

## B

The court will try to address these arguments as a reason to stay discovery. Does the discovery sought merely go to the merits of the Acorn claim or does it seek facts that support its claim that the court has subject matter jurisdiction? In this regard, the complaint must be examined, and in paragraph eleven it states that "in deciding to eliminate from the petition and/or not approve the zoning map amendment and the change of zoning designation of the Acorn Property to a PVD district, the [defendant] acted illegally, arbitrarily,

and in abuse of the discretion vested in it in one or more of the following ways . . . ." Several relevant subparagraphs then state: "(a) The [defendant's] action was the product of improper considerations and or influences on the [defendant] relating to the potential use of the Acorn Property by a third party. (b) The [defendant] or certain of its members considered information from outside the record and/or engaged in ex parte communications. (c) The [defendant's] action was predetermined. (d) The [defendant] deprived [the] plaintiff of its right to due process. (e) The [defendant] considered and/or based its action on improper factors, reasons and/or criteria that are not contained in the Connecticut General Statutes and the Zoning Regulations."

Subparagraph (g) goes on to state the actions and failures to act of the defendant regarding the map change and rezoning to a PVD district that occurred even though the change "fully complied with the applicable criteria of the Connecticut General Statutes and the Zoning Regulations." Indeed, these actions "were based upon improper and extraneous reasons and/or motives," as stated in subparagraph (h).

It is important to read the basic Acorn claim with other, earlier paragraphs in the complaint. In paragraph three, it was noted that the defendant submitted to itself a petition regarding the map change and the PVD designation. No one spoke or submitted any evidence "in opposition to such change in the zoning designation," as stated in paragraph six. No member of the defendant during the public hearings indicated any opposition. But in fact, on August 25, 2006, the defendant decided to not approve the zoning map amendment and to eliminate from the petition the Acorn property designation as a PVD district. All of this was done for the allegedly improper reasons set forth in the previously referenced paragraph eleven.

The examination of the complaint is related to the decision on the motion to stay. This is so because the law is quite clear that in addressing a motion to dismiss, the pleadings are construed "broadly in favor of the plaintiff." *Shay* v. *Rossi*, 253 Conn. 134, 140, 749 A.2d 1147 (2000), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003). It would seem to follow that the same presumptive validity should be given to the complaint in deciding whether discovery designed to elicit jurisdictional facts in support of the complaint should be permitted where a subject matter jurisdiction motion is filed. How else is a court fully and fairly to exercise its jurisdiction to decide whether it has jurisdiction?

Taking the allegations of the complaint in their most favorable light to rebut the jurisdictional attack, it seems to say that but for improper considerations, ex parte communications, predetermination and actions interfering with Acorn's right to due process, the map change and PVD zone change regarding the Acorn property would have been approved. This is not a case where the subject matter at issue was proposed by a private or corporate citizen, and the zoning authority refused to act on it. See *Harlow* v. *Planning & Zoning Commission*, supra, 194 Conn. 187. What Acorn desires to go into effect regarding a PVD district was contained in a petition the defendant had already made to itself. No one spoke in opposition to it in public meetings. In fact, the plaintiff's brief in opposition to the motion to stay notes that at a July 25, 2006 public hearing, the defendant's chairman stated that a PVD district was "planned" for the Acorn property. Acorn spoke for it and, allegedly for improper reasons, part of the petition was approved, but that part that the defendant originally proposed, affecting the Acorn property, was eliminated.

If these allegations are proven, and of course they may very well not be, then comments on the absence

of a complete record and an expressed desire to examine the matter further by the defendant's chairman miss the point. The record would be in the state it is because the defendant, through its improper actions (again, if proven), prevented a fuller record for illegal reasons, which were arbitrary and in abuse of its discretion, to paraphrase paragraph eleven.

Accepting these premises, if they are established, the absence of finality argument is not persuasive. Judicial review can hardly be said to threaten to " 'disrupt the orderly process of [administrative] adjudication' "; *State* v. *State Employees' Review Board,* supra, 231 Conn. 403; the whole claim is that the "process" was far from orderly. There would be no need to protect the local agency from " 'judicial interference until an administrative decision has been formalized . . . .' " Id. Judicial interference is arguably necessary to ensure the very integrity of the administrative process.

*State Employees' Review Board* also mentioned that "[a]nother significant consideration"; id., 404; is whether the agency intended its decision to be final.

In a situation where the allegation is that the decision for the PVD zone regarding the Acorn property would have been final but for illegal and ex parte communications in violation of statute, zoning laws and the requirements of due process, this observation on the defendant's intention regarding finality can hardly be used to deny the wronged party access to the courts. The point is, if the allegations are established, the defendant improperly and unintentionally nullified the rendering of a final decision that it would otherwise have reached absent the claimed illegalities. Under these circumstances, how on earth can the defendant not be estopped from stating that one reason that the court has no subject matter jurisdiction is that we did not

render a final decision—exactly; that is what the case is[1] all about.

## C

Acorn will have a heavy burden to establish its allegations, but if it does, the analysis given by the court would not appear to require dismissal. That being the case, the court has difficulty in granting the motion to stay that discovery, which is aimed at developing facts in defense of the court's jurisdiction.

The case law does not seem to suggest a contrary result. *Sendak* v. *Planning & Zoning Commission*, 7 Conn. App. 238, 508 A.2d 781 (1986) (*Borden, J.*), is an interesting case in this regard. The former revision of General Statutes § 8-28 was involved, which provided in relevant part that "any person aggrieved by an official action or decision of a planning commission, including a decision to take no action . . . may appeal therefrom . . . ." (Internal quotation marks omitted.) *Sendak* v. *Planning & Zoning Commission*, supra, 242. The plaintiffs appealed from a decision to enter into stipulated judgments regarding several actions filed by a company seeking to subdivide its property. The court held, interestingly enough, that "absent bad faith, collusion or other improper conduct by the parties, a planning commission's decision to settle an appeal by way of a stipulated judgment is not an official action or decision within the meaning of (§ 8-28) . . . ." Id., 244. *Sendak*, which is cited by the defendant in its memorandum of law in support of its motion to dismiss, is of course not directly on point. But it does indicate that the statutes

---

[1] The court uses the word "case" advisedly because the complaint is interesting in itself, although the discussion assumes we are talking about an "appeal" from the actions or failures to act of the defendant. This is true in a general sense, but the complaint is titled not just "appeal," but "complaint and appeal." And it asks the court to order the defendant to approve and put into effect a change in the zoning map and to rezone the Acorn property to a PVD district.

addressing zoning and governing the right to appeal are not meant to be a straightjacket barring or even delaying private or corporate citizens from seeking redress in the courts when local agencies are proven to have violated basic rights and procedural values. Even a system placing great value on "settlement" of cases, as noted in *Sendak,* will not tolerate collusion or bad faith to encourage that process.[2]

Also, in a very basic sense, the problem before the court is related to the concept of standing or aggrievement, lack of which is claimed as another reason why the court has no subject matter jurisdiction to entertain this matter as to both counts. In this regard, it should be noted that "[t]he question of aggrievement is essentially one of standing . . . ." *Beckish* v. *Manafort,* 175 Conn. 415, 419, 399 A.2d 1274 (1978); see also *Quarry Knoll II Corp.* v. *Planning & Zoning Commission,* 256 Conn. 674, 701, 780 A.2d 1 (2001). What is aggrievement? Aggrievement requires a "showing that [the plaintiff] had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest . . . ." (Internal quotation marks omitted.) *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 507–508, 242 A.2d 705 (1968). As Robert A. Fuller puts it, classic aggrievement requires a "specific, personal and legal interest in the subject matter of the decision," and proof that "this specific personal and legal interest has been specially and injuriously affected by the decision." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 32:5, p. 151.

---

[2] If the allegations here are proven, the suggested remedy of having Acorn file its own petition, then appealing from an adverse judgment or securing relief if the defendant refuses to act, raises real questions of fairness. A litigant would have to go back before the same forum, which it may be able to prove rejected taking an action it desires for reasons of alleged bad faith and collusion, and face delay and expense, which, but for the illegality, it would not have had to suffer.

Here, again, if the plaintiff is able to establish its allegations through discovery, its property interest, its use of the property in question will have been injuriously affected because of the illegal and arbitrary actions of the defendant. Then comes *Schwartz* v. *Town Plan & Zoning Commission,* supra, 168 Conn. 20. There, the court ultimately held that the trial court did not err in dismissing the appeals for lack of aggrievement—no property rights of the plaintiffs were affected. The defendant in *Schwartz* had amended the zoning regulations to create, as floating zones, three new shopping districts. But the court noted that the defendant did not enact the further amendments to apply the new zones to any particular areas in deprivation of any property or legal rights. If a zone change is granted and the plaintiffs are aggrieved, then and only then can they appeal. But in relevant language, the court stated: "The due process clause of the fourteenth amendment requires an opportunity for a hearing at a meaningful time and in a meaningful manner appropriate to the nature of the case." Id., 24. The court noted that such an opportunity was afforded and that the plaintiffs attended the hearings and argued against the amendments. The court went on to state: "Moreover, the root requirement of due process is that an individual be given an opportunity for a hearing before he is deprived of any significant property interest. . . . In this case, the plaintiffs have not been deprived of any property interest." (Citation omitted.) Id.

Here, if the plaintiff proves its allegations, the plaintiff cannot be said to have received a fair hearing for the reasons stated in paragraph eleven of the complaint. Also, if a "but for" analysis is applied to any such allegation so proven, the plaintiff has obviously been deprived of a legal right respecting the use of the property it owns.

In any event, for the foregoing reasons, the court cannot say that the discovery requests are frivolous

toward the end of deflecting the lack of subject matter jurisdiction attack and, thus, cannot grant the motion for a stay.

Apart from these observations in the memorandum of law attached to its motion to stay, the defendant claims that the plaintiff's discovery requests are overly broad and burdensome. Nothing in the court's opinion is meant to suggest that the defendant cannot make objection to particular discovery requests on such grounds as long as there is no interference with the plaintiff's fair right to defend against a lack of subject matter jurisdiction. Such objections can be set down for argument.

But for the reasons stated, the court denies the motion to blanketly stay all discovery.