# CITY OF STAMFORD *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES, OFFICE OF PUBLIC HEARINGS, ET AL.
## (SC 21026)

Mullins, C. J., and D'Auria, Ecker, Alexander and Dannehy, Js.

### *Syllabus*

Pursuant to the Connecticut Fair Employment Practices Act (§ 46a-94a (a)), "[t]he [Commission on Human Rights and Opportunities], any respondent or any complainant, aggrieved by a final order of a presiding officer, may appeal to the Superior Court in accordance with" the Uniform Administrative Procedure Act.

Pursuant to the Uniform Administrative Procedure Act (§ 4-183 (a) and (b)), "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court," and "[a] person may appeal a preliminary, procedural or intermediate agency action or ruling to the Superior Court if (1) it appears likely that the person will otherwise qualify under this [act] to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy."

The defendants, the Commission on Human Rights and Opportunities, its Office of Public Hearings, and the complainant, W, appealed to this court, upon certification by the Chief Justice pursuant to statute (§ 52-265a) that a matter of public interest was involved, from the trial court's decision to deny their motions to dismiss the plaintiff employer's administrative appeal from a ruling by commission's human rights referee. The referee had granted W's motion to amend his employment discrimination complaint to add a new claim regarding the denial of reasonable accommodations in light of W's disability. In moving to dismiss the plaintiff's administrative appeal, the defendants contended that interlocutory rulings are not appealable under § 46a-94a (a) and, alternatively, that the appeal was not permitted under

351 Conn. 298      FEBRUARY, 2025      299

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

§ 4-183 (b) because the statutory requirements were not satisfied. The trial
court denied the defendants' motions to dismiss on the ground that the
referee's ruling was a final decision within the meaning of § 4-183 (a) and,
therefore, was appealable under § 46a-94a (a). On appeal to this court, the
defendants claim that the referee's ruling allowing W to amend his complaint
was not an appealable "final order" under § 46a-94a (a) because it was not
a "final decision" within the meaning of § 4-183 (a) and because the statutory
criteria for interlocutory appeals under § 4-183 (b) had not been satisfied.
*Held*:

The referee's ruling allowing W to amend his complaint was not an appeal-
able "final order" under § 46a-94a (a) because it was neither a "final decision"
under § 4-183 (a) nor a "preliminary, procedural or intermediate agency
action or ruling" under § 4-183 (b), and, because the trial court lacked
subject matter jurisdiction over the plaintiff's administrative appeal from the
referee's ruling, this court reversed the trial court's denial of the defendants'
motions to dismiss the appeal and remanded the case with direction to
grant those motions.

The trial court incorrectly concluded that the referee's ruling was a "final
decision" under § 4-183 (a) rather than a preliminary, procedural or interme-
diate agency action or ruling, this court having concluded that the statutory
(§ 4-166 (5)) definition of the term "final decision" expressly distinguishes
between an agency's final decision and its interlocutory ruling or order,
there was no indication that the referee intended his ruling to be final or
to terminate any aspect of the case, the ruling did not determine any rights
or obligations or result in any legal consequences, and the process of judicial
review in this case unquestionably disrupted the orderly process of adjudi-
cation.

This court concluded that § 46a-94a (a) authorizes an appeal from a "prelimi-
nary, procedural or intermediate agency action or ruling" under § 4-183 (b),
as the legislative history of those statutory provisions established that the
legislature had intended for the term "final order" in § 46a-94a (a) to not
only encompass a "final decision" under § 4-183 (a) but also a "preliminary,
procedural or intermediate agency action or ruling" under § 4-183 (b).

Nonetheless, the referee's ruling to allow W to amend his complaint was
not appealable as a preliminary, procedural or intermediate agency action
or ruling under § 4-183 (b) when postponement of the plaintiff's appeal
would not have resulted in an inadequate remedy, as the plaintiff's putative
right not to have to litigate the amendment to W's complaint, in the absence
of a colorable claim of immunity, was simply an indirect result of an agency
proceeding and not the sort of irreparable harm that would justify immediate
resort to the courts.

Argued November 6, 2024—officially released February 25, 2025

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

*Procedural History*

Appeal from the ruling of the human rights referee of the named defendant et al. granting the defendant John Ward's motion to amend his complaint to add a cause of action for failure to accommodate a disability, brought to the Superior Court in the judicial district of New Britain, where the court, *Budzik, J.*, denied the defendants' motions to dismiss; thereafter, upon certification by the Chief Justice pursuant to General Statutes § 52-265a that a matter of substantial public interest was involved, the defendants appealed to this court. *Reversed*; *judgment directed.*

*Michael E. Roberts*, former human rights attorney, for the appellants (named defendant et al.).

*Michael S. Toma*, assistant corporation counsel, with whom, on the brief, was *Barbara M. Schellenberg*, for the appellee (plaintiff).

*David M. Cohen*, with whom, on the brief, was *Zachary J. Phillipps*, for the appellee (defendant John Ward).

*Opinion*

ECKER, J. This public interest appeal under General Statutes § 52-265a requires us to address the relationship between the appeal provisions contained in two related statutory schemes, namely, the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq., and the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., as they apply to appeals to the Superior Court from decisions made by a human rights referee (referee)[1] of the defendant Commission on Human Rights and Opportu-

_____

[1] "Human rights referee" is the term used for the presiding officer in a contested public hearing before the Commission on Human Rights and Opportunities. See Regs., Conn. State Agencies § 46a-54-79a (a).

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

nities (CHRO).[2] Pursuant to the CFEPA, only "a final order of a presiding officer" is appealable "in accordance with [§] 4-183 [of the UAPA]." General Statutes § 46a-94a (a).[3] The UAPA provides that an appeal to the Superior Court may be taken from either an agency's "final decision"; General Statutes § 4-183 (a); or "a preliminary, procedural or intermediate agency action or ruling . . . if (1) it appears likely that the person will otherwise qualify . . . to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy." General Statutes § 4-183 (b). The primary issue in this appeal is whether a "final order" under the CFEPA is limited to a "final decision," as defined by the UAPA, or whether it also includes an appealable "preliminary, procedural or intermediate agency action or ruling" under § 4-183 (b). We conclude that the term "final order" encompasses both final decisions under § 4-183 (a) and appealable interlocutory

---

[2] Both the CHRO and its Office of Public Hearings (OPH), which is the administrative unit of the CHRO that includes its human rights referees, are named as defendants in this administrative appeal. Due to the "unusual procedures" applicable to the CHRO, the CHRO appears in this appeal in its prosecutorial capacity, as well as "in its capacity as the agency under which [its] human rights referee issued the decision [being] appealed . . . ." *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 322 Conn. 154, 157 n.1, 140 A.3d 190 (2016); see also General Statutes § 46a-94a. For the sake of simplicity, we refer to both the CHRO and the OPH collectively as the CHRO. We refer to the OPH individually, when necessary.

The complainant, John Ward, is also named as a defendant pursuant to General Statutes § 4-183 (c).

[3] General Statutes § 46a-94a (a) provides in relevant part: "The [CHRO], any respondent or any complainant, aggrieved by a final order of a presiding officer, may appeal to the Superior Court in accordance with section 4-183. . . ."

The second sentence of § 46a-94a (a), not applicable to the present case, further provides: "Any complainant may appeal to the Superior Court in accordance with section 4-183 if the complainant is aggrieved by (1) the dismissal of his or her complaint by the [CHRO] for failure to attend a mandatory mediation session as provided in subsection (m) of section 46a-83, (2) a finding of no reasonable cause as provided in subsection (g) of section 46a-83, or (3) rejection of reconsideration as provided in subsection (h) of section 46a-83."

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

orders under § 4-183 (b). The order at issue in this case, however, was neither an appealable final decision nor an appealable interlocutory order. Accordingly, we reverse the trial court's decision and remand with direction to render judgment granting the defendants' motions to dismiss the city's administrative appeal.

I

The record reveals the following facts. The complainant, John Ward, filed a complaint with the CHRO, alleging that the plaintiff, the city of Stamford (city), had violated the CFEPA, specifically, General Statutes § 46a-60 (b) (1), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., as enforced through General Statutes § 46a-58 (a), when it terminated his employment on the basis of his status as a veteran of the United States Marine Corps and his disability. The CHRO investigated his complaint and issued a finding of reasonable cause on the basis of the facts alleged.[4] The CHRO then certified this complaint to the named defendant, the Office of Public Hearings (OPH), and assigned a human rights referee to preside over a public hearing on the matter. See footnote 2 of this opinion.

Shortly after the public hearing commenced, the complainant orally moved to amend his complaint to assert an additional claim alleging the denial of reasonable accommodations. Over the city's objection, the referee adjourned the public hearing to give the complainant the opportunity to file a written motion to amend. The complainant subsequently filed a written motion to amend his complaint and attached his amended complaint, adding a claim for failure to provide reasonable accommodations. The city filed an objection, arguing that the court should deny the motion because the

[4] "Reasonable cause" is "a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgment could believe the facts alleged in the complaint." General Statutes § 46a-83 (f).

351 Conn. 298 FEBRUARY, 2025 303

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

amended complaint raised a new cause of action that had not been the subject of a reasonable cause finding pursuant to General Statutes §§ 46a-83 and 46a-84. The referee overruled the city's objection and granted the complainant's motion to amend his complaint in a written ruling. In his ruling, the referee concluded that the complainant's proposed amendment was reasonable pursuant to General Statutes § 46a-84 (g) and § 46a-54-79a (e) of the Regulations of Connecticut State Agencies because it related back to the complainant's original allegations of disability discrimination and could have been included in the original complaint. The referee also found that the hearing would not be unreasonably delayed by granting the motion to amend and indicated that the parties would be allowed the opportunity to introduce additional, relevant evidence.

The city filed an interlocutory administrative appeal from the referee's ruling with the Superior Court pursuant to § 4-183 (b), alleging that the referee had improperly granted the complainant's motion to amend his complaint to include a new and separate claim without an investigation or a reasonable cause finding, thereby depriving the CHRO of jurisdiction to hold a public hearing on the newly added claim. The CHRO filed a motion to dismiss the administrative appeal on the ground that the trial court lacked subject matter jurisdiction because interlocutory orders are not appealable under § 46a-94a (a). In the alternative, the CHRO argued that the city had not satisfied the legal requirements for filing an interlocutory appeal pursuant to § 4-183 (b). The trial court denied the motion to dismiss, finding that the challenged order was "final (and therefore appealable) for purposes of this appeal."[5] Because the court's ruling was based on its conclusion that the order granting the motion to amend the complaint was a "final

_____

[5] The CHRO, the OPH, and the complainant each filed motions to dismiss the appeal, all of which were denied by the trial court in the same decision.

Stamford *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

decision'' within the meaning of § 4-183 (a), it did not reach the issue of whether the appeal was authorized under § 4-183 (b).

The CHRO subsequently filed an application for certification to appeal to this court pursuant to § 52-265a, which then Chief Justice Richard A. Robinson granted, limited to the following questions: (1) ''Was the . . . referee's [ruling] to permit an amendment of a complaint to allow a new cause of action for failure to accommodate the [complainant's] disability an agency order that is appealable to the Superior Court? See General Statutes § 46a-94a (a); General Statutes § 4-183 (b); see also *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 142–43, 788 A.2d 1158 (2002).'' And (2) ''[i]f the answer to question 1 is 'yes,' did the human rights referee correctly permit the [complainant] to amend his complaint pursuant to . . . § 46a-84 (g), after the start of contested case proceedings, to assert a failure to accommodate claim without first requiring the investigation of and finding of reasonable cause for that claim under . . . §§ 46a-83 and 46a-84?''

On appeal, the CHRO and the complainant argue that the referee's ruling granting the complainant's motion to amend the complaint was not appealable under the CFEPA because it was not a ''final decision'' under § 4-183 (a) such that it was appealable under § 46a-94a (a). They further argue that the city's premature appeal disrupted the referee's orderly adjudication of the merits of the complainant's claims. They also ask this court to reject the city's alternative argument that the referee's ruling, if deemed interlocutory, was an intermediate agency ruling appealable under § 4-183 (b) because, even if § 46a-94a (a) permitted the appeal of interlocutory rulings in accordance with § 4-183 (b), the postponement of the present appeal would not ''result in an inadequate remedy,'' as required by § 4-183 (b) (2). In their view, the city's appeal did not satisfy the statutory

Stamford *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

criterion, which permits an interlocutory appeal only when "postponement of the appeal would result in an inadequate remedy." General Statutes § 4-183 (b) (2).

The city contends that the trial court properly held that the referee's ruling was a "final order" under § 46a-94a (a) because it was a "final decision" under § 4-183 (a) of the UAPA. The city relies primarily on the legal standard articulated in *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 142–45, which we will discuss. Alternatively, the city argues that, even if the trial court's ruling was not a final decision, it nonetheless was an appealable interlocutory order under § 4-183 (b) because it appeared likely that the city could qualify to appeal from the final agency action or ruling, and postponement of the appeal would result in an inadequate remedy. As to the adequacy of the remedy under § 4-183 (b) (2), the city alleges that, if it were forced to wait until the end of the case to challenge the CHRO's jurisdiction over the complainant's amended complaint, it would be deprived of its right not to have to litigate the claim at all.

II

The applicable standard of review and relevant legal principles are straightforward. Whether the city had a statutory right to appeal from the ruling of the referee is a question of statutory construction over which our review is plenary. See, e.g., *United Illuminating Co.* v. *Public Utilities Regulatory Authority*, 350 Conn. 660, 678–79, 325 A.3d 900 (2024). If the city did not have statutory authority to appeal from the referee's ruling, then we must conclude that the trial court lacked subject matter jurisdiction. See, e.g., *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 693, 189 A.3d 79 (2018) ("[a]ppeals to the courts from administrative [agencies] exist only under statutory authority" (internal quotation marks omitted)).

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

In matters of statutory interpretation, we are guided by General Statutes § 1-2z, which directs us first to consider "the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." A statute is ambiguous if it "is susceptible to more than one plausible interpretation." *State* v. *Orr*, 291 Conn. 642, 654, 969 A.2d 750 (2009).

To determine whether the city had a statutory right to appeal from the ruling of the referee permitting the complainant to amend his complaint, we must examine the language of the CFEPA and the UAPA, both of which apply to the present case. See General Statutes § 4-185 (a) and (b) (providing that UAPA "applies to all agency proceedings commenced on or after July 1, 1989," unless "expressly exempted"); see also General Statutes § 4-186 (providing for certain UAPA exemptions and statutory conflicts, none of which includes CHRO). In accordance with § 1-2z, we begin our analysis with the plain language of the relevant statutes, remaining mindful that "we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of [those] statute[s]." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014).

A

We first address whether the trial court correctly determined that the referee's ruling granting the complainant's motion to amend his complaint qualified as a "final decision" under subsection (a) of § 4-183 of the UAPA, such that it was an appealable "final order" under § 46a-94a (a) of the CFEPA. Section 46a-94a (a),

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

which governs appeals from the decisions of the CHRO, provides in relevant part that "[t]he [CHRO], any respondent or any complainant, aggrieved by a *final order* of a presiding officer, may appeal to the Superior Court in accordance with section 4-183. . . ." (Emphasis added.) The statute indicates that it permits an appeal only from a "final order" and not any other type of agency action.[6] Although the term "final order" is not defined in the statutory scheme, we agree with the parties that, at the very least, it encompasses a "final decision" appealable under § 4-183 (a) of the UAPA. The initial question, therefore, is whether the referee's ruling permitting amendment of the complaint is a final decision within the meaning of § 4-183 (a). The trial court held that it was. We disagree.

Section 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ." The UAPA defines a "final decision," in relevant part, as "the agency determination in a contested case . . . . The term does not include a

---

[6] The city argues that nothing in the language of the statute provides that "*only* final orders may be appealed . . . ." (Emphasis in original.) We attach no significance to this observation. The syntax of the statute demonstrates that the clause "aggrieved by a final order of a presiding officer" modifies the clause "[t]he [CHRO], any respondent or any complainant," thus making clear that such parties may appeal under § 46a-94a (a) only if they are (1) aggrieved (2) by a final order (3) of a presiding officer. General Statutes § 46a-94a (a); see, e.g., *Indian Spring Land Co.* v. *Inland Wetlands & Watercourses Agency*, 322 Conn. 1, 14, 145 A.3d 851 (2016) ("the meaning of a statute will typically heed the commands of its punctuation" (internal quotation marks omitted)). Moreover, "[t]here is no absolute right of appeal to the courts from a decision of an administrative agency. . . . Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Internal quotation marks omitted.) *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, 347 Conn. 317, 328, 297 A.3d 531 (2023). We consequently are bound by the text of the statute.

Stamford *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

preliminary or intermediate ruling or order of an agency . . . .'' General Statutes § 4-166 (5). The plain language of the statutory definition of ''final decision'' is instructive in two respects.

First, the definition refers to ''*the* agency determination in a contested case,'' not *an* agency determination. (Emphasis added.) General Statutes § 4-166 (5). We have previously said that, ''[a]s a definite article, the word 'the' refers to a specific object whereas the indefinite articles 'a' and 'an' refer to unlimited objects.'' *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758, 764, 621 A.2d 258 (1993); see also *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 282, 545 A.2d 530 (1988) (''the definite article 'the' . . . particularizes the words it precedes and is a word of limitation,'' whereas ''the indefinite article 'a' has an 'indefinite or generalizing force' ''). The use of the definite article ''the'' in the definition thus ''suggests that ordinarily there would be but one final decision'' in an administrative proceeding. *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 143. The legislature could not have intended the ''final decision'' to include a ruling granting a motion, at the earliest stages of a proceeding, that does not terminate any aspect of the case but merely permits a party to amend a complaint.[7]

Second, the statute expressly excludes ''preliminary or intermediate ruling[s] or order[s]'' from its definition of ''final decision.'' General Statutes § 4-166 (5). Although

[7] We recognize that, under certain circumstances, there might be more than one final decision in a single contested case. See, e.g., *State* v. *State Employees' Review Board*, 231 Conn. 391, 402–404, 409–410, 650 A.2d 158 (1994) (holding that final determination on merits of contested case was final decision prior to final determination of damages); *New Haven* v. *New Haven Police Union Local 530*, 210 Conn. 597, 605–606, 557 A.2d 506 (1989) (same). Such circumstances, however, typically involve ancillary matters decided after the agency's adjudication of the core issue in the case, not preliminary agency rulings before a determination on the merits has been made.

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

the UAPA does not define the phrase "preliminary or intermediate ruling[s] or order[s]," the juxtaposition of this exclusion with the singularity of the term "final decision" indicates that the latter term is not intended to include agency rulings made prior to the final decision. The legislature plainly intended that significance be given to its express exclusion of "preliminary or intermediate ruling[s] or order[s]" from the definition of "final decision." See, e.g., *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010) ("[T]he legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.)).

The express distinction made in § 4-166 (5) between the final decision and preliminary or intermediate orders is reinforced, in nearly identical terms, in § 4-183 itself with respect to the right of appeal. Section 4-183 (a) authorizes appeals from an agency's "final decision" by any person who has exhausted all administrative remedies and is aggrieved by the final decision, and § 4-183 (b) permits an appeal, under very limited circumstances, from "a preliminary, procedural or intermediate agency action or ruling . . . ."[8] This corresponding statutory language demonstrates the legislature's clear intention to distinguish between the agency's final decision and its interlocutory orders and to treat the two types of agency action differently for

---

[8] "A person may appeal a preliminary, procedural or intermediate agency action or ruling" only "if (1) it appears likely that the person will otherwise qualify under this chapter to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy." General Statutes § 4-183 (b).

Stamford *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

purposes of appeal. As a result, we are persuaded that the referee's ruling granting the complainant's motion to amend his complaint was not a final decision but, rather, was a preliminary, procedural or intermediate ruling of the agency.

Our conclusion is bolstered by reference to our judicial precedent elaborating on the "relevant considerations in determining finality" for purposes of § 4-183 (a). (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 145. These relevant considerations include "whether the process of administrative [decision-making] has reached a stage where judicial review will not disrupt the orderly process of adjudication," "whether rights or obligations have been determined or legal consequences will flow from the agency action," and "whether the agency intended its decision to be final." (Internal quotation marks omitted.) Id.; accord *State* v. *State Employees' Review Board*, 231 Conn. 391, 403–404, 650 A.2d 158 (1994); *New Haven* v. *New Haven Police Union Local 530*, 210 Conn. 597, 604, 557 A.2d 506 (1989).[9]

---

[9] The CHRO asks us to explicitly disavow the finality considerations first set forth in *New Haven* v. *New Haven Police Union Local 530*, supra, 210 Conn. 604, and later applied in *State* v. *State Employees' Review Board*, supra, 231 Conn. 403–404, and *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 145. Because we ultimately agree with the CHRO that the referee's ruling was not a final decision, we decline to reconsider the vitality of our prior case law regarding the finality of agency decisions. See, e.g., *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 417, 195 A.3d 664 (2018) ("[t]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it" (internal quotation marks omitted)). We acknowledge that *State Employees' Review Board* and *New Haven Police Union Local 530* both applied the pre-1988 version of the UAPA, before the legislature amended it to provide a statutory definition of "final decision" in § 4-166. See Public Acts 1988, No. 88-317, § 1. We further recognize that this court has previously applied the considerations identified in those two cases, as well as in *Nizzardo*, to procedural postures very different from that of the present appeal. See *State* v. *State Employees' Review Board*, supra, 402–409 (determining whether final determination on merits was final decision when agency retained jurisdiction over damages); *New Haven* v. *New Haven Police Union*

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

There is no indication in the present case that the referee intended his ruling to terminate any aspect of the case. To the contrary, the ruling states: "In granting the motion to amend, this tribunal is not making any determination or expressing any opinion that [the complainant] will prevail on the claims in his amendment or his complaint." The referee's written ruling closes with the entry of scheduling orders to move the proceeding forward, including a deadline for the city to "file and serve its answer to the amended complaint" and a date for the next status conference. All of this demonstrates that the ruling was preliminary in nature and did not constitute a decision ending the proceeding.

The trial court acknowledged in its decision that there was "no evidence in the record that the CHRO intended the [referee's ruling] to be final" but nonetheless concluded that the order was a final decision.[10] In support of its conclusion, the trial court explained that "[w]hether . . . a particular determination is . . . final is determined by the substance of what the agency has purported to do and has done, and not by the label placed [on] it." (Internal quotation marks omitted.) While this observation is true, as far as it goes, we

*Local 530*, supra, 603–607 (same); *Nizzardo* v. *State Traffic Commission*, supra, 145–46 (determining whether trial court's denial of third-party motion to intervene was final decision). Nonetheless, at this point, the finality considerations set forth in *Nizzardo*, *State Employees' Review Board*, and *New Haven Police Union Local 530* remain applicable when helpful to resolving whether the underlying agency order or ruling is a final decision.

[10] In concluding that the referee's ruling was a final decision, the trial court applied the ripeness test set forth in *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86–87, 952 A.2d 1 (2008). See id., 87 (requiring trial court to assess whether case "present[s] a hypothetical injury or a claim contingent [on] some event that has not and indeed may never transpire" (internal quotation marks omitted)). This reference to ripeness is understandable because the doctrine is mentioned in *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 144, but, to be clear, ripeness and finality are different concepts, and whether an issue is ripe for adjudication often is not a helpful consideration for determining whether a decision is appealable under § 4-183.

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

stated in *State* v. *State Employees' Review Board*, supra, 231 Conn. 391, that, "[a]lthough we agree that the label of an administrative decision is not dispositive of the agency's intent, we do not agree that finality may be determined irrespective of the intent of the agency issuing the order." Id., 408. The intention of the agency, among other considerations, matters because "[w]e view our statutes as giving an agency discretion to limit in a practical way the scope of an administrative proceeding in a contested case . . . ." *New Haven* v. *New Haven Police Union Local 530*, supra, 210 Conn. 606. The record in the present appeal demonstrates that the referee intended the order to be a preliminary agency action, not a final decision.

This court's decision in *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities*, 202 Conn. 150, 520 A.2d 186 (1987), helps to illustrate the point. We held in *Connecticut Bank & Trust Co.* that a CHRO order determining that the respondent had discriminated against the complainant, requiring the respondent to develop a sexual harassment grievance procedure for its employees and granting backpay to the complainant was not a final decision pursuant to General Statutes (Rev. to 1983) § 4-183 (a) because the agency had not yet fully determined the extent of damages, which determination was nonministerial in nature in that it required the presiding officer to exercise additional, independent judgment or discretion. See id., 152, 155–57. Crucially, the agency in that case did not appear to intend its decision to be final, and further proceedings before the agency regarding damages had been "expressly indicated by the terms of the order." *New Haven* v. *New Haven Police Union Local 530*, supra, 210 Conn. 605 n.2. If the order at issue in *Connecticut Bank & Trust Co.* did not qualify as a final decision because the agency did not intend it to be final, it follows, a fortiori, that the referee's ruling in the present case did not qualify either.

351 Conn. 298 FEBRUARY, 2025 313

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

The referee's ruling also did not determine any "rights or obligations" or result in any "legal consequences" that would make the ruling final under our precedent. (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 145. Although our case law does not provide extensive guidance on this prong of the analysis, we have found the requirement satisfied only when the proceedings have advanced to the point where the agency has ordered the respondent to take remedial action with immediate effect. See *State* v. *State Employees' Review Board*, supra, 231 Conn. 404–405 (agency's determination that respondent improperly laid off employee and requiring respondent to undertake review of position classifications constituted "legal consequences" for purposes of appeal (internal quotation marks omitted)); *New Haven* v. *New Haven Police Union Local 530*, supra, 210 Conn. 604–605 (agency's determination that respondent failed to perform its statutory duty to bargain and requiring respondent to take various remedial steps constituted determination of "rights or obligations" and imposition of "legal consequences" for purposes of appeal (internal quotation marks omitted)).

The referee's ruling in the present case did not decide whether the complainant would prevail on any of his claims, determine the city's liability, if any, or order any relief. The sole legal consequence identified by the city is the violation of its putative "right not to be subject to a hearing [that] the CHRO has no jurisdiction to hold . . . ." We disagree with the trial court's view that this consequence was a concrete and ongoing injury "for as long as [the city was] compelled to participate in a public hearing for which it claims a lack of jurisdiction."[11] The legal consequences that satisfy the final

[11] In support of this proposition, the trial court cited *Lost Trail, LLC* v. *Weston*, 140 Conn. App. 136, 147, 57 A.3d 905, cert. denied, 308 Conn. 915, 61 A.3d 1102 (2013). See id. ("[a] final decision has been rendered when the initial [decision maker has] arrived at a definitive position on the issue that inflict[ed] an actual, concrete injury" (internal quotation marks omit-

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

decision requirement under *Nizzardo* and its precursors do not relate to the continued existence of the administrative proceeding itself but, rather, to the adjudication of the merits and the disposition of the underlying claims for relief. An agency ruling or order does not automatically transform into an appealable final decision for purposes of § 4-183 (a) merely because it rejects a party's jurisdictional objection.[12]

Finally, there is no question that the process of judicial review in the case has disrupted the orderly process of adjudication. As a result of the city's administrative appeal, the trial court stayed the proceedings on the complainant's claim under the ADA, allowing only his CFEPA claim to proceed. After our decision in this case, the CHRO will be required to reconvene the proceedings for the purpose of adjudicating the complainant's ADA claim, which, but for this appeal, would have been adjudicated in tandem with the CFEPA claim in the same proceeding. The inefficiency of this process is manifest.

B

Having determined that the referee's ruling was not a "final decision" under § 4-183 (a) of the UAPA, we next address whether § 46a-94a (a) of the CFEPA permits the appeal of "preliminary, procedural or intermediate agency action[s] or ruling[s]" under § 4-183 (b) and, if so, whether the referee's ruling in this case was properly subject to an interlocutory appeal. We conclude that

ted)). *Lost Trail, LLC,* is inapposite, as it arose in the context of a regulatory taking claim subject to the unique requirements of General Statutes § 8-8 and its associated judicial precedent.

[12] To be clear, we do not reach the question of whether the CHRO has jurisdiction over the amended complaint in the present case because, under our holding, a claimed jurisdictional defect does not, without more, render an agency action or ruling a "final decision." To the extent that a party seeks judicial review of a colorable claim of immunity from suit, the proper channel would be an interlocutory appeal pursuant to § 4-183 (b). See part II B of this opinion.

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

an appeal of such interlocutory actions or rulings in agency proceedings is authorized, but the facts of the present case do not meet the criteria set forth in § 4-183 (b).

As we previously observed in this opinion, § 46a-94a (a) of the CFEPA requires the existence of a "final order" to bring an "appeal to the Superior Court in accordance with section 4-183." Unlike the term "final decision," however, the term "final order" is not defined in the statutory scheme, and its meaning has not been construed in any relevant judicial precedent. It is therefore unclear whether a "final order" under § 46a-94a (a) is limited to a "final decision" under § 4-183 (a) of the UAPA, as the CHRO[13] and complainant argue, or whether it also includes within its ambit a "preliminary, procedural or intermediate agency action or ruling" pursuant to § 4-183 (b) of the UAPA, which is the construction that aligns with the city's position. Because the term "final order" is susceptible to more than one plausible interpretation, it is ambiguous for purposes of § 1-2z. See, e.g., *State* v. *Orr*, supra, 291 Conn. 654. Accordingly, we consult extratextual sources to determine its meaning.

We begin with the legislature's first major attempt to harmonize the various administrative appeal processes throughout the state after the passage of the UAPA. See Public Acts 1971, No. 854. In 1977, the legislature enacted No. 77-603 of the 1977 Public Acts (P.A. 77-603), "An Act to Make Appeals from Administrative Decisions Uniform," which incorporated the UAPA

---

[13] The city argues that the CHRO should be judicially estopped from asserting that interlocutory appeals are not permitted from CHRO proceedings because the agency took the opposite position in *Commission on Human Rights & Opportunities* v. *Dept. of Correction*, Docket No. HHB-CV-22-6071371, 2022 WL 2297866 (Conn. Super. June 22, 2022). In light of our conclusion that § 46a-94a (a) of the CFEPA permits interlocutory appeals in line with § 4-183 (b) of the UAPA, we need not reach the city's estoppel claim.

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

appeals statute, General Statutes (Rev. to 1977) § 4-183, as amended by P.A. 77-603, § 1, into the statutory framework governing administrative actions and rulings made by many government agencies. Section 124 of P.A. 77-603 expressly incorporated the UAPA appeal provision into the CFEPA, although it carved out an exception providing unique venue requirements for administrative appeals from the CHRO.[14] The fact that the legislature took the opportunity to enact an explicit exception to the applicability of the venue provision of the UAPA in appeals from CHRO proceedings indicates that it would have inserted additional exceptions had it desired to do so.[15] We therefore consider it particularly noteworthy that P.A. 77-603, § 124, did not exempt CHRO proceedings from the UAPA provision permitting appeals of "preliminary, procedural or intermediate agency action[s] or ruling[s] . . . ." General Statutes (Rev. to 1977) § 4-183 (a), as amended by P.A. 77-603, § 1. This same legislative history likewise reveals that the legislature intended to exempt only three specific

---

[14] Appeals under the UAPA were required to be brought in "the Superior Court for Hartford County or for the county or judicial district wherein the aggrieved person resides or if such person is not a resident of this state to the court for Hartford County . . . ." General Statutes (Rev. to 1977) § 4-183 (b), as amended by P.A. 77-603, § 1. However, appeals from CHRO proceedings were an exception. See General Statutes (Rev. to 1977) § 31-128 (d), as amended by P.A. 77-603, § 124 ("[a]ny respondent or complainant aggrieved by a final order of a [CHRO] hearing tribunal or any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with section 4-183 . . . except venue for such appeal shall be in the county or judicial district where the unfair employment practice is alleged to have occurred or in the county or judicial district wherein such person resides or transacts business").

[15] See *Chestnut Point Realty, LLC* v. *East Windsor*, 324 Conn. 528, 537–38, 153 A.3d 636 (2017) (finding that legislature did not intend to change meaning of statutory provision at issue when it "remained largely unchanged in substance over time," despite "frequent amendment" of broader statutory scheme); see also *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 336 Conn. 633, 644, 249 A.3d 327 (2020) ("[w]here the legislature has taken action in an area, [this court] generally interpret[s] the legislature's failure to take similar action in a closely related area as indicative of a decision not to do so" (internal quotation marks omitted)).

351 Conn. 298 FEBRUARY, 2025 317

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

agencies from the appeal provisions of the UAPA: the Tax Commissioner, the Unemployment Compensation Commissioner, and the Worker's Compensation Commissioner. See 20 H.R. Proc., Pt. 13, 1977 Sess., pp. 5253–54, remarks of Representative Ernest N. Abate. We assume, then, that the legislature intended for all aspects of General Statutes (Rev. to 1977) § 4-183, as amended by P.A. 77-603, § 1, except its venue provisions, to apply to appeals from CHRO proceedings.

In 1988, the legislature passed a comprehensive overhaul of the UAPA; see Public Acts 1988, No. 88-317 (P.A. 88-317); as well as an amendment to the CFEPA; see 1988 Public Acts, No. 88-241 (P.A. 88-241); to "clarify and simplify the procedures for the appeal and enforcement of decisions of hearing officers . . . ." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1988 Sess., p. 724. The legislative history of P.A. 88-317 and P.A. 88-241 reinforces our understanding that the legislature intended to permit interlocutory appeals from CHRO proceedings in accordance with § 4-183 (b). In correspondence to the legislature, the CHRO expressed reservations that the proposed changes to the UAPA "appear[ed] to encourage interlocutory appeals," asserting that this would "increase the burden on the already overworked courts" and result in "agency decisions [being] delayed and costs increased." Letter from Philip A. Murphy, CHRO counsel, to Representative Richard D. Tulisano et al. (February 29, 1988) p. 7.[16] The Connecticut Judicial Department expressed

---

[16] The legislative history reveals collaboration between the Connecticut Law Revision Commission and the CHRO to ensure that the proposed updates to the UAPA contained in Senate Bill No. 209, 1988 Sess., conformed with the CFEPA. See, e.g., Memorandum from David D. Biklen, executive director of the Connecticut Law Revision Commission, to Senator Anthony V. Avallone et al. (February 26, 1988) p. 1 ("Today, the Law Revision Commission's advisory committee on Senate Bill 209 . . . met for two and one half hours to discuss comments made at the [p]ublic [h]earing on the bill. Also attending were Attorney Philip Murphy and Ellie Kaplan both of the [CHRO]. Several adjustments in the bill were agreed to in the light of these comments.").

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

concerns about the interlocutory appeal provisions, as well. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988 Sess., p. 312, testimony of Faith A. Mandell of the Office of the Chief Court Administrator.

In response to these concerns, the legislature could have eliminated the interlocutory appeal provisions from the UAPA or expressly exempted the CHRO from those provisions, but it did neither. Instead, it retained the interlocutory appeal provisions in the final version of the statute. See P.A. 88-317, § 23. The Connecticut Law Revision Commission reiterated its position that the availability of interlocutory appeals from administrative proceedings "would benefit the efficiency and responsiveness of the system as a whole." Letter from David D. Biklen, executive director of the Connecticut Law Revision Commission, to Senator Anthony V. Avallone et al. (February 26, 1988) p. 2. We also find it noteworthy that the Connecticut Law Revision Commission chose to implement other changes to the proposed legislation requested by the CHRO but left the interlocutory appeals language intact. See, e.g., Memorandum from Biklen to Senator Avallone et al. (March 2, 1988) p. 2 (proposing several changes to Senate Bill No. 209 at recommendation of CHRO, including replacing term "hearing" officer with term "presiding" officer (internal quotation marks omitted)). This background further convinces us that the legislature intended to permit interlocutory appeals from CHRO proceedings.

The legislature demonstrated this intention again when it amended the CFEPA in 1998 to remove the venue exception in General Statutes (Rev. to 1997) § 46a-94a (a), which had been the only statutory exception to the UAPA applicable to the CHRO. See Public Acts 1998, No. 98-245, § 5. In revisiting the CHRO's appeal provision, the legislature once again could have taken the opportunity to carve out an exception for interlocutory appeals under General Statutes (Rev. to

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

1997) § 4-183 (b), but it did not do so. Since 1998, there have been several further amendments to both the UAPA and the CFEPA, but the relevant language for our purposes has remained unchanged. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Internal quotation marks omitted.) *Costanzo* v. *Plainfield*, 344 Conn. 86, 108, 277 A.3d 772 (2022). We will assume that the legislature was intentional in its decision to remove the venue exception in 1998 and knowingly chose not to insert any further limitations on interlocutory appeals in its subsequent amendments to the statutory scheme.

The preceding legislative history establishes that the legislature intended to harmonize the laws governing appeals from decisions made by various administrative agencies, including the CHRO, and did not perceive any conflict between the term "final order" in § 46a-94a (a) and the provision of § 4-183 (b) providing for interlocutory appeals. We therefore conclude that the legislature intended that both provisions apply to appeals from CHRO proceedings and viewed the term "final order" as encompassing both a "final decision" under § 4-183 (a) and a "preliminary, procedural or intermediate agency action or ruling" under § 4-183 (b).

Our conclusion finds further support in our decision in *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, supra, 329 Conn. 684, which arose from an interlocutory appeal from the CHRO's denial of a motion to dismiss. Id., 686. Although *Trinity Christian School* did not squarely interpret the statutory language of § 46a-94a (a) or analyze its relationship to § 4-183, the decision assumed that interlocutory appeals were available from CHRO proceedings. The plaintiff employer in that case claimed immunity from suit as a religious institution under General Statutes

Stamford *v.* Commission on Human Rights & Opportunities, Office of Public Hearings

§ 52-571b (d) such that the CHRO had no jurisdiction over the case. Id., 686–87. As part of our analysis, we noted that administrative appeals are available from agency decisions under both § 4-183 (a) and (b), and we further explained that "a colorable claim to a right to be free from an action is protected . . . through the availability of an immediate interlocutory appeal from the denial of a motion to dismiss." (Internal quotation marks omitted.) Id., 693. We ultimately determined that the plaintiff was not immune from suit under § 52-571b (d) and therefore concluded that the CHRO's denial of its motion to dismiss was "not an immediately appealable order." Id., 687. None of the analysis in *Trinity Christian School* would have been necessary if § 4-183 (b) were inapplicable to the CHRO.[17]

The CHRO contends that our case law dictates that parties to CHRO proceedings may not appeal "preliminary or intermediate rulings issued along the way," relying on *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities*, supra, 202 Conn. 150. The CHRO's reliance on this case is misplaced. As we previously discussed in this opinion, the central inquiry in *Connecticut Bank & Trust Co.* was whether the CHRO's decision on the merits of a case that left open postadjudicatory matters of damages constituted a "final decision" for purposes of appeal under General Statutes (Rev. to 1983) § 4-183 (a). See id., 155. *Connecticut Bank & Trust Co.* did not involve anything like the situation presented in the present case, which concerns

---

[17] The CHRO did not argue in *Trinity Christian School* that an appeal was unavailable pursuant to § 4-183 (b). Indeed, it took the opposite position. See *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, Conn. Supreme Court Briefs & Appendices, November Term, 2017, Defendant's Brief pp. 14–19. There is, of course, no rule that an agency cannot change its view of the law over time. When an agency does so, however, it would be helpful for the agency to explain the reasons for reversing its position. In the present case, the court was not provided insight as to why the CHRO changed its position.

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

a ruling allowing an additional claim to be adjudicated at the very early stages of a proceeding. Furthermore, there was no argument in *Connecticut Bank & Trust Co.* that the CHRO's decision was a "preliminary, procedural or intermediate agency action or ruling" under General Statutes (Rev. to 1983) § 4-183 (a). As such, the court did not have occasion to assess the question we consider here, namely, whether a "final order" under the CFEPA includes within its meaning an interlocutory appeal under the UAPA.

Lastly, having determined that § 4-183 (b) applies to CHRO proceedings, we address whether the referee's ruling in this case granting the complainant's motion to amend his complaint was appealable as a preliminary, procedural or intermediate agency action or ruling under that provision. As we noted, § 4-183 (b) permits a person to bring an interlocutory appeal from a CHRO proceeding only if "(1) it appears likely that the person will otherwise qualify under this chapter to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy." General Statutes § 4-183 (b). The CHRO concedes that the city has satisfied the first requirement but argues that "[t]he second requirement . . . was unfulfilled, depriving the Superior Court of jurisdiction." We agree.

The city's sole argument, that it has "a right . . . not to have to litigate the amendment to the complaint at all" rests on its claim that the CHRO did not have jurisdiction to permit the filing of the amended complaint. In support of its claim, the city cites to *Waterbury* v. *Commission on Human Rights & Opportunities*, 160 Conn. 226, 235, 278 A.2d 771 (1971) (holding that CHRO lacked jurisdiction to hold hearing because it had not undertaken any of required procedural steps, including conducting preliminary investigation and establishing reasonable cause), and *Dufraine* v. *Commission on Human Rights & Opportunities*, 236 Conn.

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

250, 262, 673 A.2d 101 (1996) (holding that CHRO lacked jurisdiction to hold hearing because it had failed to conduct complete and thorough investigation in support of its reasonable cause determination). The city contends that this alleged jurisdictional defect gives it a "right to be free from defending [the complainant's] amendment at a public hearing . . . ." It purports to find support for its position in *Trinity Christian School.* See *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, supra, 329 Conn. 693 (holding that "a colorable claim [of immunity from suit] is protected from the immediate and irrevocable loss that would be occasioned by having to defend an action through the availability of an immediate interlocutory appeal from the denial of a motion to dismiss" (internal quotation marks omitted)). The city argues that, like the plaintiff employer in *Trinity Christian School*, it has a colorable claim to immunity from suit on the basis of the CHRO's allegedly improper granting of the complainant's motion to amend his complaint. We find no merit in the city's arguments.

The city does not point to any source of law conferring immunity on a respondent from participation in CHRO proceedings solely on the basis of an alleged jurisdictional defect. "We have never suggested . . . that jurisdictional prerequisites to suit are intended to confer immunity from suit. If that were the case, an interlocutory appeal would be permitted every time a party challenged the satisfaction of any of the numerous justiciability matters that we have deemed to be jurisdictional in nature (standing, mootness, ripeness, political question doctrine) . . . or any condition precedent to suit in a statutorily created cause of action that similarly has been deemed jurisdictional." (Citation omitted.) *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 751, 150 A.3d 1109 (2016). The city's jurisdictional argument does not implicate any legitimate claim of immunity

Stamford *v.* Commission on Human Rights & Opportunities,
Office of Public Hearings

and provides no basis to appeal the referee's interlocutory ruling.[18]

The referee's ruling at issue in this case is more akin to the order of the Connecticut Medical Examining Board (board) in *Doe* v. *Dept. of Public Health*, 52 Conn. App. 513, 727 A.2d 260, cert. denied, 249 Conn. 908, 733 A.2d 225 (1999), in which the agency declined to dismiss a statement of charges brought against the plaintiff physician. See id., 514. The Appellate Court held that the respondent was not entitled to appeal from the interlocutory ruling of the board under § 4-183 (b) because he still had the adequate remedy of "complete vindication" in the administrative proceeding. Id., 522. The court noted that the plaintiff had "not been denied any right to practice his profession," that "formal hearings on the pending charges [had] yet [to be] held," and that "no determination [had] been made concerning his medical license . . . ." Id., 520–21. Similarly, in the present case, there has been no agency determination on the merits of the complaint; nor has the plaintiff been ordered to pay damages or penalties or otherwise to engage in any remedial action. The city may obtain "complete vindication" by the end of the administrative proceeding. Id., 522. Having to participate in an agency proceeding, in the absence of a colorable claim of immunity, is "an indirect result of an agency proceeding and

---

[18] The city also cites *Shay* v. *Rossi*, 253 Conn. 134, 165, 749 A.2d 1147 (2000), and *Halladay* v. *Commissioner of Correction*, 340 Conn. 52, 62, 262 A.3d 823 (2021), both of which apply our final judgment doctrine under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), to trial court proceedings. Although our final judgment jurisprudence is similar and might provide some guidance in cases involving administrative finality, their "respective criteria are not necessarily the same." *State* v. *State Employees' Review Board*, supra, 231 Conn. 410; see also *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 148 (administrative finality doctrine "is not determined by the different body of finality jurisprudence applicable to trial court judgments"). In the present case, our administrative finality jurisprudence is sufficient to resolve the issue of whether the referee's ruling was properly subject to appeal under § 4-183 (b).

is not the sort of irreparable harm that would justify immediate resort to the courts." Id., 521.

We conclude that the referee's ruling granting the complainant leave to amend his complaint was not an appealable preliminary agency action or ruling pursuant to § 4-183 (b).

### III

For the foregoing reasons, we hold that the referee's ruling permitting the complainant to amend his complaint was not a "final order" under § 46a-94a (a) of the CFEPA because it was neither a "final decision" nor an appealable "preliminary, procedural or intermediate agency action or ruling" pursuant to § 4-183 (a) or (b), respectively, of the UAPA. Because the trial court did not have subject matter jurisdiction over the present appeal, we reverse the trial court's decision and remand with direction to render judgment granting the defendants' motions to dismiss the city's appeal.[19]

The decision of the trial court is reversed and the case is remanded to that court with direction to render judgment granting the defendants' motions to dismiss the city's appeal.

In this opinion the other justices concurred.

———————————————